*434 OPINION OF THE COURT
Levine, J.
Kevin King died October 23, 1994 during what eyewitnesses described as a mob attack outside a pizzeria in the City of Olean, Cattaraugus County. The matter was submitted to a Grand Jury by the Cattaraugus County District Attorney. Some four months after the occurrence, the Grand Jury returned a no true bill. The Grand Jury’s failure to indict the persons allegedly involved in King’s death evoked a bitter public protest by the victim’s family that the case had been mishandled. The ensuing local community outcry prompted a resolution of the County Legislature, endorsed by the District Attorney, requesting the assistance of the State Attorney-General.
The Attorney-General accepted the invitation to assist in the King matter. On that basis, he and four Assistant Attorneys-General were appointed by the District Attorney as Assistant District Attorneys for Cattaraugus County. One of those assistants then prepared and submitted, in his capacity as an Assistant District Attorney, an application for permission to represent the matter to another Grand Jury pursuant to CPL 190.75 (3). After respondent Larry M. Himelein, Cattaraugus County Judge, granted the application, the King fatality was again presented to a Grand Jury by one of the newly appointed prosecutors from the Attorney-General’s staff. The Grand Jury handed up a 42-count indictment charging petitioners with various offenses against King, including depraved mind murder, manslaughter, criminally negligent homicide and first and second degree assaults.
In addition to moving to dismiss the indictment in the criminal action in County Court, petitioners brought this CPLR article 78 proceeding before the Appellate Division seeking a writ of prohibition against respondents. The gravamen of their claim is that, in the absence of an Executive Order of superseder issued by the Governor pursuant to Executive Law § 63 (2), the Attorney-General and his staff were and remain *435 without jurisdictional authority to assume any prosecutorial role in this local criminal matter. The relief requested was an order enjoining the County Judge and District Attorney, as well as the Attorney-General and members of his staff, from proceeding further in prosecuting the case, and dismissing the indictment.
The Appellate Division agreed with petitioners that the sole basis for the Attorney-General’s office to intervene in this criminal prosecution was by superseder ordered by the Governor pursuant to Executive Law § 63 (2) (221 AD2d 138). The Court concluded that the absence of an Executive Order was a fatal jurisdictional defect preventing all respondents from proceeding to trial on the indictment. Accordingly, the Appellate Division granted the petition in all respects, except for the request to dismiss the indictment — a matter found to be not properly before that Court (id.). We granted the motions of the Attorney-General and District Attorney for leave to appeal, and now reverse.
As this Court recently reiterated in Matter of Pirro v Angiolillo (89 NY2d 351, 355, 356), the extraordinary remedy of prohibition is only available to prevent a judicial or quasi-judicial body or officer from proceeding or threatening to proceed without or in excess of its jurisdiction, and then only if a clear legal right to that relief has been established. Prohibition may lie against a prosecutor (as well as against a court) in performing the quasi-judicial role of "representing] the public in bringing those accused of crime to justice” (Matter of Schumer v Holtzman, 60 NY2d 46, 51; see also, Matter of Forte v Supreme Ct. of State of N. Y., 48 NY2d 179, 185; Matter of Dondi v Jones, 40 NY2d 8, 13). Prohibition may also be available against the Attorney-General when exercising or threatening to exercise an ultra vires prosecutorial function (see, Matter of B. T. Prods. v Barr, 44 NY2d 226).
We have held that the Attorney-General’s prosecutorial authority is strictly limited to the specific statutory grants of such authority (see, Della Pietra v State of New York, 71 NY2d 792, 796-797). Nonetheless, petitioners have failed to establish here that the Attorney-General or his staff have acted or threatened to act without or in excess of duly prescribed jurisdiction. Indeed, the essential deficiency in petitioners’ proof is the absence of any evidence that the Attorney-General was purporting to exercise the prosecutorial authority of that office in the instant case.
*436 As is plainly provided in Executive Law § 63 (2), in those instances when the Attorney-General exercises prescribed superseder authority to assume the prosecutorial function, that office then acquires "all the powers and perform[s] all the duties in respect of such actions or proceedings [before a court or Grand Jury], which the district attorney would otherwise be authorized or required to exercise or perform.” Similar language is contained in most other provisions granting the Attorney-General prosecutorial authority over specific categories of criminal offenses, with or without direction from the Governor (see, e.g., Executive Law § 70-a [7]; ECL 71-2105 [4]; General Business Law §§ 358, 692; Real Property Law § 442-e [2]; § 446-h [2]).
Had the Attorney-General’s office asserted authority in this local criminal matter to "exercise all the powers and perform all the duties * * * which the district attorney would otherwise be authorized or required to exercise or perform,” the absence of an Executive Order would have rendered the intervention jurisdictionally defective, even if requested and agreed to by the District Attorney. As we explained in Matter of Schumer v Holtzman (supra), the essence of a District Attorney’s constitutional, statutory and common-law prosecutorial authority is the "discretionary power to determine whom, whether and how to prosecute [a criminal] matter” (60 NY2d, at 52), the responsibility and accountability for which is not freely transferable to anyone else, and that includes the Attorney-General.
The record in this case does not show any transfer of the fundamental and ultimate responsibility of the Cattaraugus District Attorney to the Attorney-General or his Assistant Attorneys-General. To the contrary, the uncontradicted sworn statements of the District Attorney and the Chief of the Attorney-General’s Criminal Prosecutions Bureau bespeak a clear understanding by all parties that the District Attorney retained the ultimate prosecutorial authority involving the King homicide. Moreover, the record is devoid of any proof of any appearance by the Attorney-General in any of the criminal proceedings in this case, either personally or on his behalf. Nor is there any evidence of his intention to personally participate in the prosecution as the case progresses to its final disposition.
Thus, the record in this prohibition proceeding is devoid of any evidentiary refutation of the sworn ássertion that the Attorney-General had "simply agreed to assist the district at *437 torney by furnishing Assistant Attorneys-General to work with him and under his direction.”
Moreover, petitioners have pointed to no provision of law, nor have we found any in our research, prohibiting the Attorney-General from providing the services of Assistant Attorneys-General to aid a county District Attorney in the prosecution of a criminal matter {compare, Executive Law § 63-d). Nor have we been shown any jurisdictional bar to the appointment of a member of the Attorney-General’s staff as an Assistant District Attorney to perform prosecutorial duties under the direction of the District Attorney.*
As noted, the Attorney-General has not personally appeared or otherwise acted pursuant to his appointment as an Assistant District Attorney in this case, or evinced any intention to personally participate in the prosecution of the indictment. Thus, we are not called upon to answer the separate question, of first impression, whether, because of the very nature of the Attorney-General’s position as a State-wide constitutional officer, such officer should be prohibited by implication from exercising the incongruous position of a subordinate prosecuting officer under the direction and control of a local District Attorney. To whatever extent this feature of the case may have jurisdictional implications, petitioners have failed to show that the Attorney-General personally has proceeded or threatened to proceed in violation of a clear legal bar in that manner (cf., Matter of Schumer v Holtzman, 60 NY2d, at 51, supra).
Accordingly, the judgment of the Appellate Division should be reversed, without costs, and the petition dismissed.
Chief Judge Kaye and Judges Bellacosa, Smith and Ciparick concur; Judges Titone and Wesley taking no part.
Judgment reversed, etc.

 To the extent that the appointments to the position of Assistant District Attorney, Cattaraugus County here may implicate residency requirements of Public Officers Law § 3 (1), we have previously held that such eligibility features are not jurisdictional in nature (see, People v Dunbar, 53 NY2d 868, 871; see also, People v Carter, 77 NY2d 95, 103).